IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| PEGGY L. P., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 21-CV-306-JFJ |
| | ) |
| KILOLO KIJAKAZI,[1] | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

Plaintiff Peggy L. P. seeks judicial review of the decision of the Commissioner of the Social Security Administration ("SSA") denying her claim for disability benefits under Titles II and XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i) and 1382c(a)(3). In accordance with 28 U.S.C. § 636(c)(1) & (3), the parties have consented to proceed before a United States Magistrate Judge. For the reasons explained below, the Court **REVERSES and REMANDS** the Commissioner's decision denying benefits. Any appeal of this decision will be directly to the Tenth Circuit Court of Appeals.

**I.    General Legal Standards and Standard of Review**

"Disabled" is defined under the Social Security Act as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A physical or mental impairment is an impairment "that results from anatomical, physiological, or psychological

---

[1] Effective July 9, 2021, pursuant to Federal Rule of Civil Procedure 25(d), Kilolo Kijakazi, Acting Commissioner of Social Security, is substituted as the defendant in this action. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). A medically determinable impairment must be established by "objective medical evidence," such as medical signs and laboratory findings, from an "acceptable medical source," such as a licensed and certified psychologist or licensed physician; the plaintiff's own "statement of symptoms, a diagnosis, or a medical opinion is not sufficient to establish the existence of an impairment(s)." 20 C.F.R. §§ 404.1521, 416.921. *See* 20 C.F.R. §§ 404.1502(a), 404.1513(a), 416.902(a), 416.913(a). A plaintiff is disabled under the Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. §§ 404.1520, 416.920; *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (explaining five steps and burden shifting process). To determine whether a claimant is disabled, the Commissioner inquires: (1) whether the claimant is currently working; (2) whether the claimant suffers from a severe impairment or combination of impairments; (3) whether the impairment meets an impairment listed in Appendix 1 of the relevant regulation; (4) considering the Commissioner's assessment of the claimant's residual functioning capacity ("RFC"), whether the impairment prevents the claimant from continuing her past relevant work; and (5) considering assessment of the RFC and other factors, whether the claimant can perform other types of work existing in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). If a claimant satisfies her burden of proof as to the first four steps, the burden shifts to the Commissioner at step five to establish the claimant can perform other work in the

national economy. *Williams*, 844 F.2d at 751. "If a determination can be made at any of the steps that a plaintiff is or is not disabled, evaluation under a subsequent step is not necessary." *Id.* at 750.

In reviewing a decision of the Commissioner, a United States District Court is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence. *See Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See id.* A court's review is based on the administrative record, and a court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Id.* A court may neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. *See Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005). Even if a court might have reached a different conclusion, the Commissioner's decision stands if it is supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

## II.     Procedural History and the ALJ's Decision

On August 10, 2018, Plaintiff, then a 61-year-old female, applied for Title II disability insurance benefits and Title XVI supplemental security income benefits. R. 12, 251-58. Plaintiff alleges that she has been unable to work since April 1, 2018, due to chronic systolic heart failure, ejection fraction of 30%, shortness of breath, dizziness, inability to walk long distances, extreme fatigue, complications from heart valve surgery, use of a cane, and low blood pressure. R. 251, 257, 291-92. Plaintiff's claims for benefits were denied initially and on reconsideration. R. 65-120. ALJ Steven M. Rachal conducted an administrative hearing and issued a decision on

3

February 9, 2021, denying benefits and finding Plaintiff not disabled. R. 12-20, 26-60. The Appeals Council denied review on May 27, 2021 (R. 1-6), rendering the Commissioner's decision final. 20 C.F.R. §§ 404.981, 416.1481. Plaintiff filed this appeal on July 29, 2021. ECF No. 2.

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of April 1, 2018. R. 14. At step two, the ALJ found that Plaintiff's congestive heart failure, chronic obstructive pulmonary disease ("COPD"), obesity, and mitral valve disease were severe impairments, but that her hypertension, hyperlipidemia, hepatitis C, and depressive disorder were non-severe. R. 15. At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. R. 16.

After considering some of Plaintiff's subjective allegations, the medical source opinion evidence, and some of the objective medical evidence in the record, the ALJ concluded that Plaintiff had the RFC to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a), 416.967(a), except she was limited to no more than occasional exposure to fumes, odors, dusts, gases, and poor ventilation and she required a single-point cane for balance and ambulation over uneven surfaces. R. 16-17.

Based on the testimony of a vocational expert ("VE"), the ALJ found at step four that Plaintiff could return to her past relevant work as a debt collector as actually and generally performed. R. 20. Accordingly, the ALJ concluded Plaintiff was not disabled. *Id*.

### III. Issues

Plaintiff raises two points of error in her challenge to the Commissioner's denial of benefits: (1) the ALJ failed to consider all of Plaintiff's impairments at step two of the sequential analysis; and (2) the ALJ failed to account for all of Plaintiff's impairments in the RFC assessment

at phase one of step four.² ECF No. 14. The Court agrees the ALJ erred failed to properly account for Plaintiff's non-severe mental impairment in assessing the RFC at phase one of step four. Because reversal is recommended on this basis, Plaintiff's other argument is not discussed.

IV. Analysis

    A. **Standards Governing Consideration of Non-severe Mental Impairments in RFC Assessment**

A claimant's RFC is her "maximum remaining ability to do sustained work activities in an ordinary work setting" for 8 hours a day, 5 days per week despite her impairments. Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *2 (July 2, 1996). In assessing the RFC, "the ALJ must consider the combined effect of all of the claimant's medically determinable impairments, *whether severe or not severe*." *Wells v. Colvin,* 727 F.3d 1061, 1065 (10th Cir. 2013); *see also* 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2) ("We will consider all of [a claimant's] medically determinable impairments of which we are aware, including . . . impairments that are not 'severe' . . . when we assess [a claimant's] residual functional capacity."). Additionally, the ALJ must "include a narrative discussion describing how the evidence supports each conclusion" as to the claimant's work-related limitations. SSR 96-8p at *7. In other words, the ALJ must explain the basis for the limitations included in the RFC assessment with citations to "specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id*.

The ALJ's step-two assessment of limitations in the four broad areas of mental functioning, known as the "paragraph B" criteria, is not an RFC assessment. *See* SSR 96-8p at *4. Rather,

---

² The ALJ is required to make specific findings in three phases at step four. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). In phase one, the ALJ evaluates the claimant's mental and physical RFC. *Id.* In phase two, the ALJ examines the demands of the claimant's past relevant work. *Id.* Finally, in phase three, the ALJ ascertains "whether the claimant has the ability to meet the job demands found in phase two despite the [RFC] limitations found in phase one." *Id.* (citing Social Security Ruling ("SSR") 82-62, 1982 WL 31386, at *3 (Jan. 1, 1982)).

such limitations are used to rate the severity of mental impairments at steps two and three of the sequential analysis. *Id.* The RFC assessment, on the other hand, "requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraph[ ] B." *Id.* Thus, a finding at step-two that an impairment is non-severe "does not permit the ALJ simply to disregard those impairments when assessing a claimant's RFC and making conclusions at steps four and five." *Wells,* 727 F.3d at 1068-69.

> **B.     ALJ Failed to Account for Plaintiff's Non-severe Mental Impairment in Assessing the RFC**
>
> **1.     Psychological Evidence in Record**

On May 1, 2020, Plaintiff presented to physician assistant Melissa Hogan for treatment of "depression symptoms." R. 773. Plaintiff reported experiencing depression since she was a teenager, but that she had no previous mental health treatment. R. 773-74. Ms. Hogan's mental status examination was normal despite a depressed mood and tearful affect. R. 775. Ms. Hogan diagnosed Plaintiff with major depressive disorder and prescribed psychotropic medication. *Id.*

From June 2020 through September 2020, Plaintiff regularly attended individual counseling sessions with Cornelius Johnson, a licensed clinical social worker. R. 785-95. Mr. Johnson's progress notes consistently indicate Plaintiff's mood and affect were appropriate for the situation, that she actively engaged in the session, and that she made good progress towards the objectives on her treatment plan. *Id.*

At the administrative hearing, Plaintiff testified that she experiences anxiety which affects her breathing, and in turn, her ability to speak on the telephone. R. 50. Plaintiff further testified her symptoms can vary, but that she has 10-15 "bad days" in a month. R. 50-52. In response to a question about the cause of her bad days, Plaintiff stated: "Just the amount of stress of the job makes you have anxiety . . . trying to help someone with their financial problems . . . makes you

think about depression . . . . You get told no so many times a day . . . . And it can be stressful." R. 52-53. Regarding her cognitive abilities, Plaintiff stated her memory was "okay," but indicated stress and pain would sometimes overwhelm her at work, making it difficult for her to focus and maintain attention. R. 53-54. Plaintiff further testified that she had attendance issues at work because she was "depressed" and "kind of got overwhelmed." R. 54.

### 2. ALJ's Findings at Step Two

At step two, the ALJ determined that Plaintiff's depressive disorder caused mild limitations in the four paragraph B mental functional areas of understanding, remembering, or applying information; concentrating, persisting, or maintaining pace; adapting or managing oneself; and interacting with others. R. 15-16. The ALJ then concluded Plaintiff's depressive disorder did not cause more than minimal limitation in her ability to perform basic mental work activities and was therefore non-severe. *Id*. After reaching these conclusions, the ALJ acknowledged that the limitations he identified at step two were not an RFC assessment, and that the RFC requires a more detailed assessment of Plaintiff's mental impairments. R. 16.

### 3. ALJ's RFC Assessment

Although the ALJ correctly stated the applicable legal standards for considering non-severe mental impairments in formulating the RFC, he failed to properly apply them in his decision. Except for identifying "recurrent major depressive disorder, in partial remission" among the diagnoses Plaintiff received on October 28, 2020, the ALJ did not mention Plaintiff's depressive disorder in his RFC analysis at step four. R. 19. The omission of a discussion regarding Plaintiff's depressive disorder at step four demonstrates that the ALJ failed to provide a narrative discussion explaining the evidentiary basis and rationale for the RFC assessment as required by SSR 96-8p. For instance, the ALJ did not explain what, if any, work-related limitations resulted from Plaintiff's

7

non-severe depressive disorder. Moreover, the ALJ omitted mental limitations from the RFC assessment without explaining why Plaintiff's non-severe depressive disorder did not impose any limitations on her mental functioning. The ALJ thus "did not engage in any analysis of mental functions and how they may be impacted (or not) by [Plaintiff's] medically determinable impairments. It appears, therefore, that the ALJ failed to employ the step-four analytical procedure prescribed by the regulations." *Alvey v. Colvin,* 536 F. App'x 792, 794 (10th Cir. 2013). Absent a discussion of how Plaintiff's non-severe mental impairment was accounted for in the RFC assessment, or an explanation why such impairment did not impose any functional limitations, the Court is unable to "credit [the ALJ's] conclusion with substantial evidence." *Wells,* 727 F.3d at 1071.

Furthermore, the ALJ's decision indicates the RFC assessment was based solely on limitations caused by Plaintiff's *severe* impairments. The ALJ's only discussion of Plaintiff's mental health treatment occurred at step two. R. 15-16. The ALJ also entirely ignored Plaintiff's hearing testimony regarding her mental impairments in his decision. Moreover, after concluding Plaintiff's depressive disorder was non-severe, the ALJ stated that the RFC "reflects the degree of limitation the undersigned has found in the 'paragraph B' mental function analysis." R. 16. This conclusory statement is similar to the language the ALJ used in *Wells*, which the court found inadequate to support omitting mental impairments from the RFC assessment. In *Wells,* the ALJ concluded the claimant's mental impairments were non-severe, and then stated "[t]hese findings do not result in further limitations in work-related functions in the [RFC] assessment below." *Wells,* 727 F.3d at 1069. Because the court was concerned the ALJ's language indicated that he "may have relied on his step-two findings to conclude that [the claimant] had no limitation based on her mental impairments," the court held such analysis "was inadequate under the regulations

8

and the Commissioner's procedures." *Id.* The ALJ's similar statement at step two in this case is likewise inadequate support for his RFC assessment that excludes mental limitations. The ALJ's actions at step two, when combined with his omission of Plaintiff's non-severe mental impairment from the RFC discussion, make it clear the ALJ impermissibly relied on his step two findings to conclude Plaintiff had no functional limitations based on her non-severe mental impairment. *See Wells,* 727 F.3d at 1071 ("[T]o the extent the ALJ relied on his finding of non-severity as a substitute for adequate RFC analysis, the Commissioner's regulations demand a more thorough analysis."). Accordingly, the ALJ's failure to consider the functional impact of Plaintiff's non-severe depressive disorder in the RFC assessment was error under *Wells* and 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2).

The Commissioner contends the ALJ's RFC assessment is supported by substantial evidence, because "the evidence in this case simply did not show that Plaintiff had a mental impairment that significantly limited her ability to perform basic work-related activities for at least 12 consecutive months." ECF No. 15 at 7. As support for this contention, the Commissioner notes the following: (1) Plaintiff denied symptoms of depression or anxiety throughout 2018 and 2019; (2) Plaintiff did not seek mental health treatment until April 2020; (3) Plaintiff's mental status examination at the outset of treatment was unremarkable other than a depressed mood; (4) Plaintiff was treated with medication; and (5) after her initial appointment in May 2020, Plaintiff did not seek further mental health treatment until October 2020. *Id.*[3] However, the ALJ did not explain the omission of mental limitations from the RFC on this basis. Thus, the Commissioner's assertions constitute post-hoc rationales, which the Court may not adopt to uphold the ALJ's

---

[3] The Commissioner does not accurately describe the extent of Plaintiff's mental health treatment. As noted above, in addition to appointments with medical providers in May 2020 and October 2020, Plaintiff also participated in individual counseling from June 2020 through September 2020. R. 784-95.

decision. *See Haga v. Astrue,* 482 F.3d 1205, 1207-08 (10th Cir. 2007) ("[T]his court may not create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself.").

### 4. ALJ's Error was Harmful

The ALJ's failure to consider a claimant's non-severe impairments when assessing the RFC does not necessarily warrant remand if "the evidence in [the] case does not support assessing any functional limitations from mental impairments." *Alvey,* 536 F. App'x at 794; *see also Allen v. Barnhart,* 357 F.3d 1140, 1145 (10th Cir. 2004) (explaining that a finding of harmless error is appropriate where the court can "confidently say that no reasonable fact finder, following the correct analysis, could have resolved the factual matter in any other way"). In *Alvey*, there was no evidence the claimant had been treated by a mental practitioner and no substantial evidence supporting any functional limitations. *Alvey,* 536 F. App'x at 794-95. Noting the court could "employ a harmless-error analysis sua sponte on appeal when . . . the record is not overly long or complex, harmlessness is not fairly debatable, and reversal would result in futile and costly proceedings[,]" the Tenth Circuit found the ALJ's failure to analyze the impact of the claimant's non-severe mental impairments on the RFC was harmless error. *Id.* Unlike *Alvey,* there is evidence of mental health treatment in this case, including medication management and individual counseling. R. 773-820. Notably, all of Plaintiff's mental health treatment occurred after the state agency physicians completed their June 2019 and November 2019 evaluations, the record does not contain evidence of a psychological consultative examination, and the VE was never asked to consider any mental limitations in the hypothetical questions the ALJ presented to him.[4] Under

---

[4] The ALJ asked the VE about an employer's tolerance for off-task behavior and absenteeism, to which the VE replied "I use a maximum of 10%. And absenteeism is two days per month, either two whole days or four half days." R. 57-58. However, the ALJ never presented the VE with a hypothetical question that included limitations for time off task or absenteeism.

these circumstances, the Court cannot consider the ALJ's failure to evaluate the impact of Plaintiff's non-severe depressive disorder on the RFC harmless error. "While a 'not severe' impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may – when considered with limitations or restrictions due to other impairments – be critical to the outcome of a claim." SSR 96-8p at *5.

In sum, the ALJ did precisely what the Tenth Circuit condemned in *Wells*. That is, he relied on his non-severity finding at step two "as a substitute for a proper RFC analysis." *Wells*, 727 F.3d at 1065. Accordingly, the matter will be remanded for further proceedings consistent with this Order. *See id.* at 1071 (remanding for further proceedings "concerning the effect of [claimant's] medically determinable mental impairments on her RFC, and for further analysis at steps four and five, including any further hearing the ALJ deems necessary"); *Farrill v. Astrue*, 486 F. App'x 711, 713 (10th Cir. 2012) (remanding for ALJ's failure to explain exclusion of mild mental limitations found at step two from RFC findings).

## V.     Conclusion

For the foregoing reasons, the Commissioner's decision finding Plaintiff not disabled is **REVERSED and REMANDED** for proceedings consistent with this Opinion and Order.

**SO ORDERED** this 28th day of October, 2022.

**JODI F. JAYNE, MAGISTRATE JUDGE**
**UNITED STATES DISTRICT COURT**

11